UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2018 JUN -2 A 10: 23
U.S. DISTRICT COURT
NEW HAVEN, CT

IN THE MATTER OF AN APPLICATION : MISC. NO.
OF THE UNITED STATES OF AMERICA :
FOR A WARRANT AUTHORIZING THE : TO BE FILED UNDER SEAL
SEARCH OF THE BASEMENT :
APARTMENT LOCATED AT 109 MALTBY :
STREET, NEW HAVEN, CONNECTICUT : AUGUST 11, 2010

## AFFIDAVIT

MICHAEL PENDLETON, a Task Force Agent of the Federal Bureau of Investigation, New Haven Division, having been duly sworn, states the following:

1. I am a Connecticut State Police Detective assigned to the Federal Bureau of Investigation (FBI) Safe Streets Gang Task Force consisting of Agents and Officers of the FBI, New Haven Police Department, Milford Police Department, and the Connecticut State Police. I have been a Connecticut State Trooper since February 14, 1997. I previously served as an affiant for State of Connecticut arrest and search warrants. This is the second time I have been an affiant in a federal investigation. Over the past thirteen years in law enforcement, I have been involved in investigations involving fraud against the government, and investigations involving the illegal distribution of controlled substances. I have participated in investigations involving individuals suspected of distributing illegal drugs; I have coordinated controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses and undercover police officers; I have written, obtained, and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs; I have conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution; and I have analyzed records documenting the purchase and sale of illegal drugs. I have also provided testimony in court proceedings.



2. As part of my duties, I am currently participating in an ongoing investigation into the suspected criminal activity of target Angelo Reyes ("Reyes") who, along with indicted defendants Osvaldo Segui, Sr. ("Segui Sr.") and Osvaldo Segui, Jr. ("Segui Jr."), and others known and unknown, is suspected of violating of Title 18 United States Code, § 844(n) (conspiracy to commit arson), § 844(I) (damage or destruction, by means of fire or explosives, any building or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce), § 1341 (mail fraud relating to insurance claims), 1343 (wire fraud relating to insurance claims) and § 1512 (obstruction of justice). Specifically, this investigation began with violations of one of the federal arson statutes, arising from an arson on July 30, 2009 of a commercial building or property used in or otherwise affecting interstate commerce, namely, the People's Laundromat, located at 83 Lombard Street, New Haven, Connecticut. On or about June 9, 2010, a federal grand jury in New Haven indicted Segui Sr. and Segui Jr. for their participation in the July 30, 2009 arson at the People's Laundromat. The ongoing investigation is now focused on Reyes' involvement in that arson, as well as on several other arsons in the Fair Haven section of New Haven, as well as suspected mail and/or wire fraud relating to insurance claims in connection with such fires. The ongoing investigation is also exploring potential obstruction of justice in connection with the grand jury proceedings that have occurred thus far in this case.

3. I make this affidavit in support of an application for a search warrant for the residence of Osvaldo Segui and Osvaldo Segui, Jr., in connection with the ongoing investigation. The residence is the basement apartment located at 109 Maltby Street, New Haven, Connecticut, and is more fully described in Attachment A, which is incorporated herein. Until his arrest in June 2010, the basement apartment was the residence of Osvaldo Segui. Osvaldo Segui, Jr. also



resided at the apartment, but frequently stayed with his girlfriend at another apartment in the Fair Haven section of New Haven as well. Angelo Reyes is the landlord of 109 Maltby Street and allowed the Seguis to reside there rent-free. Osvaldo Segui Sr., however, has been, and remains detained since the date of his arrest in June 2010. Osvaldo Segui Jr. was released on or about June 25, 2010, but he has not been living in the subject residence and, instead, has been living at the residence of a third party custodian. Both Segui Sr. and Segui Jr., through their lawyers, have consented to law enforcement agents conducting a search of the basement apartment. Indeed, on July 29, 2010, during a meeting with the law enforcement agents and AUSAs assigned to this matter, Segui Jr., through his counsel, agreed to such a search and offered to provide them the key to the residence through his counsel. On August 4, 2010, Segui Sr. similarly consented to a search of the basement apartment in the presence of his counsel. Out of an abundance of caution, however, the government is also seeking a search warrant from the Court to the extent any additional Fourth Amendment interests are implicated by the above set of circumstances.

4. The statements in this affidavit are based in part on my own personal knowledge of the case as well as information provided by other Special Agents or Task Force Officers of the FBI, including FBI Special Agents Jim McGoey and Sam DiPasquale; Task Force Officer / New Haven Detective Michael Mastropetre and other law enforcement officers; and New Haven Fire Department investigators; as well as on my own investigation, experience, training and background. Since this affidavit is being submitted for the limited purpose of securing a search warrant for the basement apartment located at 109 Maltby Street, New Haven, Connecticut, I have not included each and every fact known to me concerning this investigation. Rather, this affidavit includes only those facts which relate to the need for, and propriety of, the requested warrant; this affidavit does not purport to set forth all of the facts gathered during the course of



the investigation of this matter.

## BACKGROUND

5. During the evening of July 30, 2009, members of the New Haven Fire Department responded to the People's Laundromat, 83 Lombard Street, New Haven, Connecticut on report of a structure fire. The building was a two-story mixed occupancy building with a laundromat on the first floor and two residential apartments on the second floor. At the time of the fire, the People's Laundromat was and had been a functioning commercial laundromat in operation on the first floor of that location.

6. Upon arrival, several fire department engine companies observed heavy smoke and fire coming from the rooftop of the structure, at which time fire fighters forced entry to the front of the structure and, fortunately, found the structure to be unoccupied at the time. Several fire fighters entered the structure on the first floor and observed the fire, which was primarily contained to the north corner of the structure, on the first floor. As fire fighters battled the fire they observed that the rear door to the structure, which can only be accessed and opened from inside the Laundromat, was propped open.

7. After the fire had been put out, and during the over-haul stage of the fire investigation, New Haven Fire Department Arson Investigator Faustino Lopez and Fire Marshal Joseph Cappucci located three red gasoline cans inside the laundromat, one of which was atop a gas clothes dryer and still intact; one was melted to half its size, located on the floor near the rear door; and the third one was located toward the front doors. New Haven Fire Department Investigator Lopez, Fire Marshal Cappucci and Connecticut State Police Detective Ken Christenson, who was accompanied by his Accelerant Detection K-9 obtained signed written consent to search the structure from Angelo Reyes, the owner of the business and structure.



During the search of the structure, Detective Christenson's K-9 alerted to the presence of accelerants and determined that the cause and origin was toward the rear of the business on the floor in the area where two of the gasoline cans were located.

8. Later that night, during the early morning hours of July 31, 2009, fire investigators and law enforcement officers obtained permission to seize, and obtained an additional signed consent to search and examine, additional evidence – namely, an "Active vision surveillance system" from the laundromat located at 83 Lombard Street, New Haven, Connecticut. On September 17, 2009, the Court issued a search warrant for a search of that surveillance system for images or other data evidencing a violation of Title 18 United States Code, § 844(I). Although the subsequent search of the DVR system did not recover images of any perpetrators, the recovered images of the fire were consistent with the conclusions of the fire investigators regarding the fire's causes and origins. In addition, data from the DVR system revealed that it was manually turned off on several occasions during a three day period leading up to the fire. After at least one of the manual shut downs, when the machine was turned back on, Segui Sr. and Angelo Reyes can thereafter be seen in the laundromat.

9. On August 3, 2009, Task Force Agent Mastropetre met with New Haven Fire Department Investigator Faustino Lopez and Fire Marshal Joseph Cappucci at New Haven Fire Department Headquarters. During the meeting, Officer Mastropetre retrieved the aforementioned gasoline cans and associated debris and transported them to the Connecticut State Police Forensic Laboratory, where they were submitted for testing for accelerants; and for DNA and finger print extraction and analysis. Lab testing for accelerants came back positive.

10. On August 4, 2009, Task Force Agent Mastropetre received information from an individual who has agreed to testify in both state and federal court (hereinafter referred to as the



"cooperating witness" or "CW"). The CW has provided truthful and accurate information in the past to members of the Federal Bureau of Investigation. The CW told Officer Mastropetre that Angelo Reyes, who is the owner of the aforementioned structure, is currently having financial difficulties. The CW further stated that she/he (the CW) was a very close associate of Reyes for several years and that over the years Reyes has utilized two particular individuals, Gaspar Augilar and Osvaldo Segui Sr. ("Segui Sr."), also known as (a/k/a) "Baldo" and/or "Bardo" to set fire to properties either owned by him (Reyes) and/or properties that he (Reyes) had interest in purchasing. The CW also stated that Segui Sr. was a very close associate of Reyes and lived rent free in one of Reyes' rental properties. In addition, the CW advised that Segui Sr. has been incarcerated on several occasions and during each of his terms of incarceration Reyes would send money to the prison for Segui Sr. and he (Reyes) would also assist Segui Sr.'s family members with their personal and/or financial needs. The CW further reported that Segui Sr. has a son – Osvaldo Segui Jr. (referred to throughout as "Segui Jr.") – who is approximately 20 to 21 years of age.

11. On August 5, 2009, New Haven Fire Investigator Faustino Lopez and Task Force Officer Mastropetre met with Leandro Acosta ("Acosta"), who lived in one of the apartments in the aforementioned structure. Acosta stated that he had lived at 83 Lombard Street for the past five months and at approximately 6:00 AM on the morning of the aforementioned fire he awoke to loud banging coming from the basement of the Laundromat and when he looked outside he observed "Bardo" (Osvaldo Segui) exiting the basement. Acosta said that it seemed strange to him that "Bardo" was in the basement of the laundromat because during the five months that he has lived there he has never seen "Bardo" doing any type of work on the property. In addition, Acosta said that "Bardo's" green Jeep Wrangler was parked unoccupied in the laundromat



parking lot for several days prior to the fire but he never saw "Bardo" around the property until the aforementioned morning.

12. On August 11, 2009, Task Force Officer Mastropetre met with New Haven Police Officer William Coppolla ("Coppolla") and, during the meeting, Officer Coppolla stated that he had received information from a known and reliable confidential informant ("CI") regarding the fire at People's Laundromat, 83 Lombard Street, New Haven. Specifically, Officer Coppolla's CI stated that Osvaldo Segui, Jr. set the fire to the aforementioned address and that as a result Segui, Jr. had sustained burns to his extremities. The CI also told Officer Coppolla that Segui Jr. went to the Yale New Haven Hospital Emergency Room to be treated for the burns and that Segui Jr. told hospital staff that he received the burns from working on a car.

13. On August 13, 2009, fire investigator Lopez and Task Force Agent Mastropetre conducted a canvass of area businesses, one of which was Miar Mart, located at 519 Ferry Street, New Haven. Upon arrival, they met with the owner and an employee, and during the ensuing conversation, the employees told the officers that Segui Jr. was a regular customer and that he (Segui Jr.) would come into the store sometimes three to four times a day to purchase soda, candy, etc. The employees went on to recall that on either July 28th or 29th Segui Jr. had come in to the store and asked if they had any used gasoline cans. An employee told Segui Jr. that they had new gasoline cans for sale but they did not have any used gasoline cans, at which time Segui Jr. left the store and they did not see him for some time since that day.

14. On or about August 20, 2009, Task Force Agent Mastropetre obtained a state search warrant for the medical records of Osvaldo Segui, Jr. from Yale New Haven Hospital relating to his reported emergency room admission there on July 30, 2009. Records produced pursuant to the court ordered search warrant confirmed that Osvaldo Segui, Jr. appeared on July 30, 2009 at



the Yale New Haven Hospital emergency room and was subsequently admitted on July 30, 2009 to the Plastic Surgery unit for a "partial thickness burn to the left lower extremity." Records produced pursuant to the warrant further indicated that "on exam of his extremities, he has a circumferential, superficial partial thickness, and superficial burn of his lower legs from below the knee to his ankle . . . On exam of his right leg, there is a blistered burn in the area of his right medial malleolus." Records produced pursuant to the warrant further indicate that Segui, Jr. self reported that he "was working on his car fuel injector when one of the lines reportedly leaked. He sustained a burn injury to his left lower leg and his right heel." After treatment, pain medication and physical therapy that included debridement of the blistered skin on the left leg and right ankle, Segui, Jr. was deemed stable and discharged on July 31, 2009 with instructions on how to perform local wound care at home and with instructions to make a follow up appointment with a treating physician. Upon information and belief, following his discharge from Yale New Haven, Segui, Jr. left the state and temporarily relocated to a residence in Kissimmee, Florida.

15. In addition, review of video footage from a neighborhood video surveillance system showed what appears to be a vehicle matching, or at least consistent with, one used by Osvaldo Segui Sr. (namely, a green Jeep Wrangler with what appears to be white "antique" plates), circling the block where the People's Laundromat was located on several occasions immediately before the fire began.

16. On or about October 20, 2009, law enforcement officers sought and obtained from this Court a search warrant to take buccal DNA swab samples from Segui, Jr.; as well as an order for Segui, Jr. to also provide: (1) "major case print" fingerprints; and (2) photographs from his person that might evidence the injuries he is believed to have sustained while participating in the



arson at the People's Laundromat on or about July 30, 2009.

17. On or about October 28, 2009, when law enforcement officers attempted to execute the Court's warrant, Segui, Jr. complied with the Court's order to give DNA swabs and major case fingerprints, and allowed law enforcement officers to take certain photographs of his person, but he refused to move or remove clothing so that law enforcement officers to take photographs of his legs.

18. In light of Segui, Jr.'s refusal to comply with this Court's original warrant, on or about December 7, 2009, law enforcement officers sought and obtained from this Court an additional, follow up search warrant specifically authorizing agents to take "photographs of the person of Osvaldo Segui, Jr., to include any and all parts of his extremities (i.e., his arms, hands, heels, feet and entire upper and lower legs), all of which may require the movement or removal of articles of exterior clothing, and all of which law enforcement officers are expressly authorized to do for the limited purpose of obtaining such photographs." When officers went to execute this second warrant, Segui Jr., again, repeatedly refused. It was not until Segui Jr consulted with an attorney that he agreed to comply with the court's order. Finally, upon his compliance, agents photographed a serious burn injury on his right (Segui's left) leg, located on his lower leg from below the knee to his ankle.

19. Subsequent investigation revealed that: (a) prior to the fire on July 30, 2009, Segui Sr. offered participation in the People's Laundromat arson to another individual, who declined to participate; (b) prior to the fire on July 30, 2009, Segui Sr. drove his vehicle to the People's Laundromat and carried gasoline cans into the laundromat; (c) on or about August 5, 2009, in an effort to conceal his conduct and avoid detection, Segui Jr. fled Connecticut and temporarily relocated to Florida, having persuaded a third party to purchase a ticket on his behalf, for which



he then paid the third party in cash; and (d) from on or about July 30, 2009 to the time of his arrest, in an effort to conceal his conduct and avoid detection, Segui Jr. falsely claimed that he sustained his burn injuries while performing work on a car that had caught fire.

### RECENT DEVELOPMENTS

20. On or about June 9, 2010, a federal grand jury in New Haven returned an indictment against Segui Sr. and Segui Jr. in connection with their participation in the July 30, 2009 fire at the People's Laundromat. Subsequent to their indictment and arrest, both Segui Sr. and Segui Jr. have separately engaged in proffer sessions with the government. During those sessions, the Seguis proffered, among other things, to having committed and participated in additional arsons at the behest of Reyes. Segui Jr. indicated that "cherry bombs" were among the incendiary devices that were sometimes used to initiate a fire. Segui Jr. indicated his belief that packaging materials for such incendiary devices may still be in the basement apartment located at 109 Maltby Street.

21. During proffer sessions, Segui Jr. also provided additional detail about his travel to Florida shortly after the July 2009 fire at the People's Laundromat. Among other things, Segui Jr. stated that Segui Sr. asked him to leave the area at Reyes' request. After checking with Reyes, Segui Sr. told Segui Jr. that Reyes would pay for a flight to Florida and that Reyes wanted him to leave the following day. Using cash provided to him by his father, Segui Jr. then paid his girlfriend's roommate to reserve and pay for his plane ticket to Florida.

22. According to both Segui Jr. and Segui, Sr. while Segui Jr. was in Florida, Segui Jr. would call and ask his father for money, primarily for medical supplies to attend to his wounds. After checking with Reyes, Segui Sr. sent Segui Jr. approximately $500 on multiple occasions. According to Segui, Jr., the money was wired to him in Florida from Western Union or Money



Gram locations in New Haven, Connecticut. Segui Jr. believes that documents reflecting his travel and money wired to him while in Florida may remain in the basement apartment at the 109 Maltby Street location in New Haven, Connecticut.

23. Based on the foregoing, there is probable cause to believe that a violation of Title 18 United States Code, § 844(n) (conspiracy to commit arson) and § 844(i) (damage or destruction, by means of fire or explosives, any building or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce) has occurred, relating to the incendiary fire and suspected arson that took place at the People's Laundromat, 83 Lombard Street, New Haven, Connecticut on July 30, 2009.

24. Based upon the foregoing, I further submit that there is probable cause to believe, and I do believe, that a search of the basement apartment located at 109 Maltby Street, New Haven Connecticut, as further described in Attachment A, may provide evidence of a violation of Title 18 United States Code, § 844(n) and § 844(i). I therefore respectfully request that a warrant issue authorizing the search amd seizure of the items listed in Attachment B.

25. Finally, I respectfully submit that this is an application that pertains to an ongoing investigation; thus, premature disclosure of the information contained herein, as well as the disclosure of the search warrant being requested herein, may compromise the investigation and increase the risk of potential harm to law enforcement officers who intend to conduct the search. Premature disclosure of the contents of this affidavit could also result in the destruction of evidence, could compromise the safety of cooperating witnesses, and could frustrate the investigation by alerting subjects or targets of the investigation to the nature of the probe, the techniques employed by law enforcement personnel, and the evidence to date, thus limiting the possible use of the grand jury to develop further admissible evidence and limiting the ability to



conduct other search warrants that could be necessary. I therefore respectfully request that the search warrant, application, this affidavit and its attachments, be ordered sealed by the Court, until further order of the Court.

_____
MICHAEL PENDLETON
TASK FORCE AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed to before me this 11th day of August 2010, at New Haven, Connecticut.

/s/
_____
THE HON. JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF PREMISES TO BE SEARCHED

The building located at 109 Maltby Street, New Haven, Connecticut is a beige, two-story building with a black roof and a chimney located in the center of the roof. The door to the basement apartment, which is currently covered with a piece of plywood, is located on the west side of the building, and is surrounded by a small cinder block type wall and has two small lights located near it.



## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Fireworks or other incendiary devices, including packaging materials.

2. Receipts, tickets, vouchers, bills, and other documents that describe travel to and from Florida.

3. Wire transfers, money orders, transfer instructions, receipts and other documents reflect the transfer of funds to individuals in Florida.